1  MORRIS POLICH & PURDY LLP
   David J. Vendler, Esq. (SBN 146528)
2  Email:      dvendler@mpplaw.com
   1055 West Seventh Street, Suite 2400
3  Los Angeles, California 90017
   Tel.:   (213) 417-5100
4  Fax:   (213) 488-1178

5  MICHAEL R. BROWN, APC
   Michael R. Brown, Esq. (SBN 65324)
6  Email:      mbrown@mrbapclaw.com
   18101 Von Karman Avenue, Suite 1940
7  Irvine, California 92612
   Tel.:   (949) 435-3888
8  Fax:   (949) 435 3801

9  Attorneys for Plaintiff, ROBERT J. NEELY,
   and all others similarly situated

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14 | ROBERT J. NEELY, individually, and | Case No.:
15 | on behalf of the class of all others |
   | similarly situated,                  |
16 |                                      | **CLASS ACTION COMPLAINT**
   |                                      | **FOR:**
17 |            Plaintiff,                |
18 | vs.                                  | 1. **BREACH OF CONTRACT**
19 |                                      | 2. **NEGLIGENCE**
   | JP MORGAN CHASE BANK, N.A.,          | 3. **BREACH OF THE COVENANT**
20 |                                      |    **OF GOOD FAITH AND FAIR**
   |            Defendant.                |    **DEALING**
21 |                                      | 4. **VIOLATION OF UNFAIR**
22 |                                      |    **COMPETITION LAW**
23 |                                      | 5. **DECLARATORY RELIEF**
24 |                                      |
25 |                                      |    **DEMAND FOR JURY TRIAL**

26

27 ///

28 ///

-1-
CLASS ACTION COMPLAINT

NOW COMES plaintiff, Robert Neely ("plaintiff"), who, on behalf of himself and all others similarly situated persons (collectively "Class Members"), complains as follows against defendant JP Morgan Chase Bank, N.A., doing business as Chase Bank, a national banking association ("CHASE" or "defendant").

## I.
## SUMMARY OF THE ACTION

1.      Subject to certain limitations, the United States Tax Code makes mortgage interest deductible from gross income.  See 26 U.S.C. § 163(a).  In fact, for almost all owners of real property, the mortgage interest deduction is their largest single tax deduction and can amount to hundreds, thousands, or even tens of thousands of dollars per year in tax savings.

2.      Borrowers on mortgages ("borrowers" or "mortgagors") typically pay mortgage interest as part of the total monthly mortgage payments they make to their lenders.  The lender will then, pursuant to the allocation provisions of the applicable note, allocate the money it receives from the mortgagor between interest, principal, and/or other amounts that may be owed by the borrower to the lender such as late fees or impounded insurance premiums or property taxes.  While monthly payments are the most common way mortgage interest is paid by borrowers, mortgage interest can also be paid in other ways.  It can be pre-paid (often as points at the beginning of the loan) or, as in this case, mortgage interest can be paid to the lender from the proceeds of the sale of the mortgaged property.

3.      Pursuant to 26 U.S.C. Section 6050H, at the conclusion of each calendar year, lenders must report on IRS Form 1098 ("Form 1098") to the IRS and to the mortgagor the *aggregate* amount of mortgage interest the lender has received in that year from the mortgagor (so long as the amount is over $600). [1]  For instance, if a

---

[1] Section 6050 states unambiguously:
          Any person —

mortgagor whose interest obligation averages $1,000 per month sells his house in June, but has made only four of the six monthly payments due in that year at the time of the sale, s/he will be required to pay the two unpaid months of interest out of the sale proceeds.  Therefore, at the conclusion of the year, the lender will have received an aggregate of $6,000 in interest from the mortgagor and must report this amount on Form 1098.  (Four $1,000 regular monthly payments + two $1,000 payments paid as a lump sum from the sale proceeds).

4.      Because the law imposes the duty of calculating mortgage interest payments on the recipients of the mortgage interest – i.e. lenders like Chase – tax-payer-borrowers, their accounting professionals, and the IRS all rely on the lender-issued Forms 1098 to determine the amount of mortgage interest that the tax-payer-borrower(s) have paid during a given year.  Indeed, even the most sophisticated of borrowers and tax preparers generally accept the information on the Forms 1098 that they receive at face value and do not cross-check to see if the information is in fact correct.  This is not only because the law imposes the duty of determining the amount of interest paid in a calendar year on lenders, but also because calculating the amount of interest paid in a year is complicated for consumers since with each monthly payment, the amount allocable to interest and principal changes and payments also include can include numerous other charges. As a result of the reliance by borrowers, accountants and the IRS on the Forms 1098 issued by the lender, if a Form 1098 issued by a lender contains wrong information, the mistake will in almost always pass undetected by the borrower, his/her tax preparer, and the IRS.  The situation is even worse if a lender fails to even issue a Form 1098 to a borrower who has in fact paid interest.  This case is of that type.

(1) who is engaged in a trade or business, and
(2) who, in the course of such trade or business, receives from any individual interest aggregating $600 or more for any calendar year on any mortgage, must report on Forms 1098 the amount of mortgage interest they "receive" if the amount is over $600.

**CLASS ACTION COMPLAINT**

5. As will be shown, CHASE has systematically, knowingly, and intentionally failed to report on Forms 1098 hundreds of millions, if not billions, of dollars in mortgage interest that it concedes it has *actually received* from borrowers who sold their homes "short."[2]  Its failure to report this interest has resulted in those borrowers losing hundreds of millions, if not billions in mortgage interest deductions that they were absolutely legally entitled to take.  Worse, because borrowers generally do not understand the principal and interest allocation provisions of their notes and how those allocation provisions operate with respect to the proceeds from a "short" sale where the lender is forgiving a portion of their debt, CHASE'S borrowers have no idea of the wrong that has been committed against them.  Moreover, even for the few (like plaintiff) that might now understand the wrong that they have suffered at the hands of CHASE, and have demanded from CHASE that it remedy the situation, CHASE has refused to do anything to correct its deliberate and intentional wrongful conduct.

## II.

## THE FINANCIAL CRISES AND RESULTING "SHORT" SALES

6. In or about 2002-2007 traditional underwriting guidelines for obtaining home loans were relaxed substantially and there was a general push in the lending industry to "close loans."  Long-term risk was subjugated to immediate gain.  New types of loan products were marketed by the lending industry to the sub-prime market, such as "Option Arm" loans and loans with artificially low "teaser rates" that allowed potential borrowers to lower their monthly payments in the short term, and thus "afford" a house they likely otherwise could not.  The pressure to sell ultimately

---

[2] A "short" sale is the "voluntary" sale of a mortgaged property by the borrower where the borrower first secures the agreement of the lender to release the mortgage upon a bona-fide sale to a third party for an agreed upon price below the mortgage loan balance.  See *Rex v. Chamse Home Finance LLC*, 905 F.Supp.2d 1111, 1119 at fn. 4 (C.D.Cal. 2012), quoting, 2 The Law of Real Estate Financing § 12:10.

resulted in a great number of risky loans being made to persons who would not have qualified in prior years using traditional underwriting guidelines.

7.     CHASE is one of the nation's leading banks.  As part of its business, it has originated or acquired hundreds of thousands, if not millions of mortgage loans, both in California and nationally.  While the specific repayment terms of CHASE loans may vary, they all provide that the borrower will, in some form or another, pay interest over the course of the loan in exchange for the borrower's use of the borrowed funds.

8.     In or around 2008, the freewheeling mortgage underwriting of earlier years came to a head with unprecedented numbers of defaulting loans.  This in turn led to the collapse and near collapse of several banks.

9.     As the financial crisis worsened over the course of 2008 and 2009, the broader American economy also faltered.  Many consumers lost their jobs and in most areas, local housing markets suffered substantial reversals.   This left many homeowners who were over-leveraged to begin with, unable to continue to pay their mortgages, or unwilling to do so because their homes were now "underwater."  As the level of borrower defaults increased, so too did the rate of foreclosures, which in turn increased the downward pressure on real estate prices.

10.    Beginning in or about 2009, banks like CHASE realized that at least in certain circumstances, it was better for them to enter into "short" sale agreements with their borrowers than to go through the time and expense of foreclosure.  Further, houses sold by a private party, even in a "short" sale, generally sell for more than a home after foreclosure, thus allowing banks like CHASE to recoup more money in a downward-spiraling real estate market.  Importantly, even if a borrower-homeowner made the request to sell a property in a "short" sale, the "short" sale avenue was solely at CHASE's option. Borrowers had to obtain Chase's permission to sell their property "short."  Chase, as with all lenders, examined each short sale transaction and only agreed to allow a "short" sale to proceed when it believed that it was in its interest to

1   do so.  If it did not believe it would benefit from the short sale, it would reject the

2   borrower's application.

3       11.    Because "short" sales by definition involve cancellation of debt, lenders

4   like CHASE are required by law to provide to the borrower (and to the IRS) an IRS

5   Form 1099-C ("Form 1099-C") at the conclusion of the year indicating, in Box 2 of

6   the form the amount of debt that was forgiven.  This is because tax law generally

7   considers cancellation of debt to be income to the borrower.  An example makes the

8   point.  Assume that a lender is owed $500,000 (in combined principal and interest) at

9   the time of the "short" sale, but agrees to accept $350,000 via "short" sale.  The lender

10  is thus forgiving $150,000 and this amount must be reported on Box 2 of Form 1099-

11  C in the year of the "short" sale. [3]

12      12.    But this is not the lender's sole reporting obligation.  In addition to

13  having to report the amount of debt being forgiven in Box 2 of Form 1099-C, lenders

14  are also required to specify the amount of the cancelled debt that is mortgage interest

15  in Box 3 of the Form 1099-C.  In order to do this, the lender must allocate the funds it

16  receives in the short sale according to the provisions in the borrower's loan agreement

17  between either: (1) payment of outstanding interest or (2) repayment of outstanding

18  principal. An example again makes the point.

19      13.    Assume again that the borrower's loan balance at the time of the "short"

20  sale is $500,000.  This time further assume the loan balance is comprised of $450,000

21  in principal and $50,000 in unpaid mortgage interest.  If the lender agrees to accept

22  $350,000 as full payment of that obligation through a "short" sale of the property, the

23  amount of the forgiven debt remains is still $150,000 and it is this amount that must

24  be reported in Box 2 on Form 1099-C.  However, in order to properly complete Box 3

25

26  [3] While forgiven debt is generally considered income to the borrower, The Mortgage Debt
27  Relief Act of 2007 allowed borrowers who participated in short sales to avoid foreclosure to
    exclude from their taxable income the amount of debt forgiveness so long as the property
28  was their principal residence.

on Form 1099-C, the lender must determine according to the allocation provisions of its note how much, if any, of the $350,000 in proceeds is allocable to paying off the $50,000 in mortgage interest that the borrower owed at the time of the "short" sale.

14.     Plaintiff alleges that CHASE's loan agreement allocation provisions, including plaintiff's, are uniformly consistent with the general rule in tax law that partial payments in satisfaction of a debt are first applied toward the reduction of interest, and only then toward repayment of principal.  See *Estate of Paul M. Bowen v. Commissioner*, 2 T.C. 1 (1943).

15.     Thus, in the above example, Chase's custom and practice is to allocate and apply the first dollars received from the proceeds of the $350,000 "short" sale to pay off the $50,000 in accrued interest.  It then allocates the remaining $300,000 to (partially) retire the $450,000 principal balance.  The remaining $150,000 in unpaid principal then becomes the forgiven debt.  Plaintiff contends that this method of allocation by CHASE is correct.

16.     CHASE's custom and practice for filling out Forms 1099-C follows its allocation method.  Specifically, it will issue the borrower in the above example a Form 1099-C with $150,000 appearing in Box 2 (as the total of forgiven debt) and $0.00 appearing in Box 3 (as the amount of the forgiven debt that is mortgage interest).  Plaintiff contends that this is also correct.

17.     And, if the $50,000 in mortgage interest in the above example is not part of the debt that is being forgiven, then it is necessarily part of the debt being paid. And if that $50,000 it is part of the paid debt, then CHASE should have reported the payment of that mortgage interest to the borrower and the IRS on Form 1098**.**  It is CHASE's failure to do so that is the nub of this case, for it is causing Class Members, who have no idea of the wrong that is being committed against them, to lose hundreds of millions, if not billions in tax deductions to which they are absolutely entitled.

### III.

### PLAINTIFF'S "SHORT" SALE

18.    Plaintiff was the owner of a single family residence located as 31102 Brooks St. in the City of Laguna Beach, County of Orange, California ("the Property").  CHASE held a mortgage on the Property which went into default when plaintiff suffered financial reversals.  As a result of his deteriorating financial condition, plaintiff approached CHASE about the possibility of it agreeing to a "short" sale of the Property.  On or about February 19, 2014, CHASE agreed to accept no less than $2,147,237.44 to release its mortgage.  A true and correct copy of CHASE'S "short" sale letter to plaintiff is attached hereto as Exhibit "A" and incorporated by this reference as though set forth in full.  This letter constituted a contract between plaintiff and CHASE.

19.    On November 24, 2014, plaintiff sold the property "short" (with CHASE's permission) for a total of $2,300,000.  After commissions and costs, CHASE received $2,147,744.11, an amount which was just over the amount it had agreed to accept.

20.    Plaintiff alleges on information and belief that as of the date of the "short" sale, the total balance due on plaintiff's CHASE loan was approximately $3,484,191.94, or approximately $1,336,447.83 less than what CHASE actually received under the "short" sale.  This was the amount that CHASE was forgiving.

21.    Without any communication with Plaintiff, CHASE internally determined how it would allocate the $2,147,744.11 between the unpaid principal balance and unpaid interest due and owing to CHASE on Plaintiff's mortgage.

22.    Sometime after the close of 2014, CHASE issued to plaintiff a Form 1099-C as it was legally obligated to do.  In Box 2 of the Form 1099-C delivered to Plaintiff and filed with the IRS, CHASE reported that it had cancelled/forgiven $1,336,447.83 of Plaintiff's debt.

23.     In Box 3 of CHASE'S Form 1099-C issued to Plaintiff, CHASE unequivocally declared to Plaintiff and the IRS that no part of the forgiven debt ($1,336,447.83) was mortgage interest.  In short, CHASE allocated all of the forgiven debt to the then outstanding principal.  A true and correct copy of the Form 1099-C sent by CHASE to plaintiff is attached hereto as Exhibit "B" and is incorporated by this reference as though set forth here in full.

24.     Since CHASE's Form 1099-C makes clear that no part of the $1,336,447.83 in forgiven debt was mortgage interest, then it necessarily follows that the $2,147,744.11 that CHASE received as proceeds from the "short" sale was used to pay off all of the outstanding mortgage interest that plaintiff owed on the Property at the time of the "short" sale.  (Plaintiff is presently unaware of the precise amount of interest he owed at the time of the "short" sale).

25.     And, since Plaintiff paid mortgage interest to CHASE in calendar year 2014, CHASE was legally obligated under 26 U.S.C 6050H to report its receipt of that interest on plaintiff's 2014 Form 1098.  CHASE, however, did not do this.  In fact, it did not issue plaintiff any Form 1098 for tax-year 2014.  Plaintiff further alleges that as part of a systemic policy and practice, CHASE does not issue Forms 1098 to borrowers like plaintiff that "short" sold their properties and paid to CHASE mortgage interest through the proceeds of the short sale.

**IV.**

**CHASE HAS REFUSED ALL REQUESTS TO CORRECT ITS WRONGFUL POLICIES**

26.     Plaintiff alleges that he made demand to CHASE prior to filing this lawsuit to provide him with a correct Form 1098 reflecting his interest payments and that such demand was refused alleging that he had paid no mortgage interest in 2014. Attached hereto as Exhibit "C" and incorporated herein by this reference as though set

forth in full is a true and correct copy of CHASE'S email response to plaintiff's demand.

## V.

## THE DAMAGES SUFFERED BY THE PLAINTIFF AND THE CLASSES AND THE NEED FOR INJUNCTIVE RELIEF

27.     As a direct and proximate result of CHASE's failure to provide him with a Form 1098 for tax-year 2014 reflecting the amount of interest plaintiff paid as part of the "short" sale, and because Plaintiff does not know the amount of mortgage interest actually paid to CHASE from the proceeds of the short sale, plaintiff filed his 2014 tax return without claiming any deduction for the mortgage interest he paid.  He estimates, however, that the amount of deductible mortgage interest he paid to CHASE in 2014 is in excess of $100,000.  Thus, plaintiff has suffered damages as a result of CHASE's conduct in that he paid more taxes than he should have had to pay.

28.     Additionally, plaintiff has suffered damages in having to spend his time and to incur the liability necessary to hire professionals to advise him as to how to remedy the problem CHASE created.

29.     Nor can plaintiff fix the problem by simply amending his tax return. There are at least two reasons for this.  First of all, plaintiff is unaware of the precise amount of mortgage interest he paid as part of the "short" sale and thus does not know what specific amendment to make.  The only reporting Plaintiff and class members receive is the Form 1099-C, which in this case reported that no part of the debt being cancelled was mortgage interest.  Second, since CHASE has steadfastly refused plaintiff's request to provide him with a Form 1098 for 2014, plaintiff knows that even if he could figure out the amount of interest he paid to CHASE as part of the "short" sale, the IRS would not only reject his amended return (because plaintiffs has no Form 1098 from CHASE to evidence of his payment of that interest), but that his attempt to amend his 2014 return to claim potentially hundreds of thousands of dollars

in mortgage interest without any corresponding evidence of payment will subject his entire tax return to additional scrutiny and make it much more likely that he would be singled out for a full-scale audit by the IRS. This would require him to expend additional money and time that he will not have to spend if CHASE fixes its error.

30. Plaintiff alleges that the IRS maintains a policy whereby it relies entirely on Forms 1098 (because mortgage lenders like CHASE have the legal duty imposed by Congress under 26 U.S.C. § 6050H to calculate and report those amounts accurately) and it will thus reject any attempt by tax-payers to claim interest amounts that are unsupported by a Form 1098.

31. The IRS's policy is evidenced by Exhibits "D" and "E" attached hereto and incorporated herein by this reference. Exhibit "D" is a redacted IRS letter sent to tax-payers who had a negative amortization mortgage with Bank of America and who tried to independently calculate and submit to the IRS the correct amount of deferred interest that they had paid when Bank of America refused to correctly report the amount of their interest payments.[4] The IRS rejected the tax-payers' return stating that: "we [the IRS] cannot adjust the amount claimed on schedule A for mortgage interest, without a corrected Form 1098." The balance of the redacted letter is not relevant to the mortgage interest issue.

32. Exhibit "E" is a letter from the IRS to a different taxpayer who had (correctly) stated on her tax return that she had paid a different amount of interest from the amount that had been stated on her Form 1098 issued by her lender. The letter again shows that the IRS automatically rejects (by form letter) all attempts by tax payers to claim amounts of interest that are not reported in a corresponding Form 1098.

---

[4] The tax-payer was a co-named-plaintiff in the Southern District of California case entitled *Horn v. Bank of America, N.A.*, No. 3:2012cv01718. This case was eventually settled and Bank of America paid damages and issued corrected Forms 1098 amounting to more than 2 billion dollars. *Horn v. Bank of America, N.A.*, 2014 WL 1455917 (S.D.Cal. 2014).

33.   There is a three-year statute of limitations for amending tax returns imposed by 26 U.S.C. § 6511.  Thus, without CHASE providing him with an accurate Form 1098 for 2014 prior to the expiry of his statute of limitations to amend his return, he will permanently lose his ability to take the deductions he is absolutely entitled to take.  This will also happen (and has already likely happened) to all class members – who at this time probably don't even know that CHASE has done them any wrong because they don't understand the ramifications to them of CHASE having allocated their debt forgiveness to principal and not to unpaid mortgage interest.

34.   Further, the harm is continuing.  "Short" sales are still happening today and CHASE is continuing to fail to report the mortgage interest that it is receiving out of the proceeds of those sales.

35.   As a direct an proximate result of CHASE's wrongful conduct, plaintiff and the Class Members have suffered damages consisting of, at least: (1) the value of their time in acting to correct CHASE'S error; (2) accountancy and legal fees necessary to evaluate CHASE'S wrongful reporting and to prepare and file amended tax returns for those years where such returns can still be filed to correct CHASE's wrongful reporting, (2) the value of any deductions they lost (both state and federal) for any under-reporting of interest in years where it is too late to file amended returns due to the expiration of the three-year statute of limitations imposed by 26 U.S.C. § 6511.  (All of this relief can properly be awarded on equitable grounds as well.)

36.   Plaintiff, on behalf of himself and the members of the class, also seeks injunctive and equitable relief from CHASE for intentionally and/or negligently under-reporting the "mortgage interest" payments it received as part of "short" sales. Plaintiff also seeks declaratory relief asking the Court to declare that CHASE's accounting and reporting practices are wrongful and that CHASE be required to issue corrected Form 1098s to plaintiff, Class Members, and to the IRS for all tax years where CHASE wrongfully reported mortgage interest payments arising from "short" sale proceeds.

**CLASS ACTION COMPLAINT**

1

2

## VI.

## THE PARTIES

3     37.    Plaintiff is an individual who during all times relevant herein resided in

4  the state of California, County of Orange, which is located in the Central District of

5  California.  He further had a mortgage loan owned and serviced by CHASE.  Plaintiff

6  alleges that CHASE received more than $600 in mortgage interest from plaintiff in the

7  2014 tax-year (coming from the proceeds of the "short" sale of the property), but

8  CHASE did not provide plaintiff with an IRS Form 1098 for that tax year because of

9  CHASE's wrongful accounting practice previously described.

10    38.    Class Members reside in and are located throughout the United States

11  and in foreign jurisdictions.  Each class member "short" sold a main home, second

12  home, residential rental home, or combination thereof in the United States, or in one

13  of its possessions or territories with CHASE's permission and approval and did not

14  receive a Form 1098 reflecting the interest that they paid in that transaction as

15  described above.

16    39.    CHASE is, and at all times mentioned herein was, a National Bank with

17  its corporate headquarters located in New York, New York and does business in all 50

18  states, including in California.

19

20

## VII.

21

## JURISDICTION AND VENUE

22    40.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

23  2201, 2202.  Subject matter jurisdiction also exists under the Class Action Fairness

24  Act of 2005 -- 28 U.S.C. §§ 1332(a) and 1332(d) -- because the matter in controversy

25  exceeds $5.0 million exclusive of interest and costs and the named plaintiff is a citizen

26  of California and CHASE is not.

27    41.    Further, Class Members reside, on information and belief, in every state

28  in the United States of America.  There is therefore minimal diversity between the

-13-

**CLASS ACTION COMPLAINT**

Class Members and the defendant.  Further, more than two-thirds of the members of the putative Class Members are citizens of states different from that of the defendant and this case does not present a local controversy.

42.     This Court has personal jurisdiction over CHASE because, among other things, CHASE does business in the State of California and in this judicial district, and because CHASE has established minimum contacts with California such that the exercise of jurisdiction over it will not offend traditional notions of fair play and substantial justice.  Indeed, CHASE has voluntarily conducted business and solicited customers in the state of California for its loans, including in this judicial district and continues to commit the wrongful acts alleged herein against California residents within this judicial district.

43.     Venue is proper in this judicial district under 18 U.S.C. §1391 and 1965. CHASE can be found in, has one or more agents in, and/or transacts or has transacted business in this judicial district.  Finally, the property and the loan transactions involving the plaintiff and CHASE occurred in this judicial district.

## VIII.
## CLASS ALLEGATIONS

44.     Plaintiff brings this action on his own behalf and on behalf of classes of persons similarly situated pursuant to Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

45.     Plaintiff seeks to represent a damage class of:

"all persons who: (1) had a CHASE mortgage secured by real property in the United States (including within its territories and protectorates); (2) sold their home pursuant to a "short" sale; (3) had the proceeds of their "short" sale allocated by CHASE to

pay more than $600 of outstanding mortgage interest without those amounts being reported by CHASE on Form 1098."[5]

46. Plaintiff also seeks to represent an injunctive class of:

"all persons who: (1) had a CHASE mortgage secured by real property in the United States (including within its territories and protectorates); (2) sold their home pursuant to a "short" sale; and (3) had the proceeds of their "short" sale allocated by CHASE to pay more than $600 of mortgage interest without those amounts being reported by CHASE on Form 1098."[6]

47. Plaintiff further asserts that if for any reason that a national class is not certified, a California-only class should be certified consisting of all members of the above classes whose properties securing their mortgages are located in California. Plaintiff further reserves the right to amend the definition of these classes, or to amend this complaint to state appropriate sub-classes following discovery. Plaintiff does not know the exact size of the classes or the identities of the Class Members since such information is in the exclusive control of CHASE. He believes, however, that the class (and the California subclass) encompasses at least tens of thousands of individuals who are geographically dispersed throughout the United States and in foreign nations. The number of members in the classes are so numerous that joinder of all Class Members is impracticable.

---

[5] This class definition assumes that CHASE will be ordered to issue corrected Forms 1098 in the correct amounts for all of the years for which it is not too late for Class Members to file amended returns. To the extent that corrected Forms 1098 are not issued, the damage class would include all persons who meet the above definition.

[6] This definition again assumes that the Court will order, as part of the injunctive relief, that CHASE issue corrected Forms 1098s to Class Members for the years for which the Class Members can still file amended returns with the IRS.

48.     There are numerous questions of law and fact common to the classes that will predominate over any questions affecting only individuals.   Among these common questions are:

a.     Whether or not the terms of CHASE' notes and deeds of trust require that payments be allocated first to payment of interest and then to principal;

b.     Whether or not CHASE is estopped from denying that portions of Class Members' "short" sale proceeds were payments of interest by its representations on the borrowers' Form 1099-C' that no part of the debt being cancelled was mortgage interest;

c.     Whether or not CHASE was legally obligated to disclose as part of its "short" sale agreement how it was going to allocate the funds it was receiving between principal and interest;

d.     Whether or not CHASE was obligated to disclose to its borrowers as part of the "short" sale agreement that it was not going to issue Forms 1098 to Class Members recognizing their payments of mortgage interest;

e.     Whether or not portions of payments that CHASE received from "short" sales were payments of mortgage so that they should have been reported by CHASE on Forms 1098 (if over $600);

f.     Whether or not CHASE maintains written and/or unwritten policies, procedures and/or practices concerning the accounting and reporting of mortgage interest payments received by CHASE from Class Members as part of "short" sales and whether or not those policies have changed over time;

g.     Whether or not CHASE had a duty to disclose to its borrowers that (due to CHASE's 1098 reporting policies) a consequence of their entering into a "short" sale was that they would lose their ability to deduct the mortgage interest they were paying because CHASE would not issue them a Form 1098;

h.     Whether or not CHASE acted intentionally in committing its wrongs against the Class Members;

i.     Whether or not injunctive relief would be appropriate to prevent further wrongful conduct by CHASE;

j.     What remedial measures would be appropriate to remedy the wrongs that have been done by CHASE to the members of the class; and

k.     Whether or not punitive damages should be awarded against CHASE;

49.   The claims of the Plaintiff are typical of the claims of the classes and do not conflict with the interests of any Class Members in that both the Plaintiff and the Class Members were subjected to the same wrongful policies, practices and procedures of CHASE and all have an interest (and legal duty) to assure that their taxes are properly stated.

50.   The Plaintiff will fairly and adequately represent the interests of the other Class Members.   The plaintiff has retained skilled and experienced counsel to represent the classes in this class action litigation.

51.   Prosecution of separate actions by individual Class Members will create the risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of Class Members who are not parties to those adjudications and would/could substantially impair or impede their ability to protect their interests.

52.   In adopting and implementing the policies, practices and procedures herein-alleged, CHASE has acted, failed, or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

53.   The class action is superior to other available methods for fairly and efficiently adjudicating the issues concerning whether CHASE's policies, practices and procedures in accounting for and reporting the payment of deferred and unpaid mortgage interest received by CHASE have class-wide impact and effect.

54.     Plaintiff further pleads on behalf of the class that the doctrines of equitable tolling and/or equitable estoppel apply to prevent the application by CHASE of any statute of limitations against the claims of Class Members.  Equitable tolling applies because, for the reasons stated above, it was reasonable for Class Members to rely upon CHASE to tell them (via Form 1098) whether or not they had paid mortgage interest and/or how much mortgage interest they had paid in a given year.  And, since CHASE did not provide them with a Form 1098 notwithstanding their payment of mortgage interest, Class Members did not have, and could not with due diligence obtain information essential to bringing a suit.  Equitable estoppel to prevent CHASE from asserting a statute of limitations against Class Members because: (1) CHASE affirmatively concealed from Class Members the amount of interest they paid which resulted in them not having the knowledge necessary to sue by failing to abide by its legal duty to report that interest to Class Members on Form 1098, and (2) falsely telling any Class Members (like plaintiff) who did inquire from CHASE as to whether they had paid any interest as part of their "short" sale, that they had not.

## COUNT I
## BREACH OF CONTRACT

55.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     With the origination of each of the Class Members' loans, CHASE, or its predecessor in interest, provided Class Members with promissory notes and deeds of trust which are contracts between Class Members and CHASE.

57.     Although these notes do not contain any provision specifically governing the manner in which CHASE would report mortgage interest to plaintiff and Class Members, such reporting is nonetheless a term of each such contract by virtue of the legal duty imposed by 26 U.S.C. § 6050H and the duty imposed by every mortgage on

the lender to service the agreement.  This term of the CHASE notes is material to borrowers because of the tax deductibility of mortgage interest and so they can carry out their legal obligation to file their taxes accurately.

58.    The CHASE notes also contain allocation provisions which specify how payments are to be allocated between principal and interest.    These allocation provisions state that payments shall be allocated to pay interest before principal.

59.    As alleged herein, CHASE entered into a second contract with plaintiff consisting of its "short" sale letter whereby it agreed to take less than the amount of plaintiff's then-existing loan balance as full and complete satisfaction for all obligations owed to CHASE under plaintiff's mortgage.  That letter contract did not specify that CHASE was going to allocate the proceeds of plaintiff's "short" sale in any manner different from the method specified in his loan agreement, promissory note or deed of trust.

60.    Plaintiff has breached its contractual obligations to plaintiff by both failing to accurately report interest payments "received" by it as required by § 6050H and the definition of interest under 26 U.S.C. § 163(a).

61.    Although plaintiff and Class Members may have been in default on their loans at the time they entered their "short" sale agreements, their defaults did not excuse CHASE from its independent duty to accurately report their payments of mortgage interest made as part of the "short" sale.  Moreover, CHASE waived any non-performance by plaintiff or the Class Members by agreeing to the "short" sale letter contracts.

62.    As a result of CHASE's breach of the implicit term of its notes and/or "short" sale letter agreements, plaintiff and the Class Members have been damaged in an amount according to proof and/or are entitled to injunctive/declaratory relief as set forth herein.

///

///

# COUNT II

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

63.    Plaintiff re-alleges and hereby incorporate each and every allegation contained in Paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64.    In every contract, parties have a duty to act in good faith and deal with each other fairly.  At the time of entering into the "short" sale agreements with plaintiff and the members of the class, CHASE was already in a contractual relationship with them consisting of the original loan agreements.  The "short" sale agreement was also a contract.  As such, CHASE had such a duty to act in good faith with respect to plaintiff and the Class Members.  This included the duty not to conceal and/or fully and unambiguously disclose to plaintiff and Class Members that even though CHASE would (correctly) use the proceeds from the short sale to first repay any unpaid and accrued interest, it would not be reporting any mortgage interest payment on the borrower's Forms 1098.  CHASE violated this duty.

65.    CHASE also breached the implied covenant of good faith and fair dealing by failing to report to the IRS Class Member payments of mortgage interest that it received from Plaintiff and Class Members out of the short sale proceeds, thereby depriving them of significant tax deductions.

66.    As a result of CHASE's breaches of the implied covenant of good faith and fair dealing, plaintiff and the Class Members have been damaged as set forth above.

67.    It is further alleged that CHASE acted intentionally and with knowledge that its reporting policies were in violation of law and took its actions notwithstanding that knowledge so as to maximize its own profits by avoiding the cost of reporting.  It is also alleged on information and belief that CHASE has failed to report these interest payments because CHASE may be writing off on its taxes the interest income that it is actually receiving via the "short" sales.

68.     CHASE's knowledge that it was in fact receiving mortgage interest payments from the short sale proceeds is evidenced by its issuance of Forms 1099-C which state that CHASE was not forgiving any unpaid interest when applying the short sale proceeds to the total amount owed to CHASE.

69.     CHASE committed its wrongful acts intentionally and with knowledge of the harm it was doing to consumers and in a manner shocking to the conscience so punitive damages should be assessed against CHASE.

## COUNT III
## NEGLIGENCE

70.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.     At all times relevant hereto, CHASE had a duty to properly account between payments of principal and payments of interest paid by its mortgagors.  It further had a duty to report on Form 1098 to plaintiff and all of its mortgagors all payments in excess of $600 made by them in any tax-year.

72.     CHASE breached these duties by negligently failing to properly account between payments of interest and principal when it received the proceeds of the plaintiff's "short" sale (and the proceeds from the Class Members' "short" sales) and by negligently failing to report the amounts that it received in those sales that were properly allocable to payment of outstanding mortgage interest on Form 1098.

73.     As a direct and proximate result of CHASE'S breaches of these duties, plaintiff and the class have suffered damages in an amount to be proven at trial.

///

///

<u>COUNT IV</u>

<u>**UNFAIR/DECEPTIVE BUSINESS PRACTICES**</u>

74.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 73 of this Complaint as though fully set forth herein.

75.     California Business & Professions Code § 17200 et seq. ("UCL") prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

76.     As alleged above, CHASE has acted unlawfully by violating the terms of 26 U.S.C. § 6050H in failing to include payments of mortgage interest that were actually made by Plaintiff and Class Members.  CHASE also acted unfairly and fraudulently in failing to disclose to plaintiff and Class Members that a consequence of entering into their "short" sale agreement, would be that CHASE would not report to the borrower or the IRS its receipt of mortgage interest in excess of $600 as required by Section 6050H.

77.     Knowing that borrowers rely on Forms 1098 to determine their mortgage interest deduction, by failing to provide borrowers with Forms 1098, CHASE understood that borrowers would forever lose their ability to deduct their accrued mortgage interest that they paid of the "short" sale.  CHASE's practices constitute an unlawful, unfair and fraudulent business practices under the UCL and would also constitute violations of similar consumer protection laws applicable in the several United States.

78.     However, in the event that the Court determines that the UCL either cannot be applied in these circumstances outside of California, or that the differences between the laws of the several states and California's UCL are so substantial as to make the administration of a class action unmanageable, then Plaintiff asserts that a separate subclass of California borrowers should be certified for at least Plaintiff's UCL claim and any others for which it is appropriate.  This class would be defined in

the same manner as the main class, but would be limited to Class Members with loans secured by real property located in California.

79.     Plaintiff has suffered losses of money or property as a result of defendants' unlawful, deceptive and unfair business practices and will incur future losses as a result of having to amend their tax returns.  As a result of defendants' violations of the UCL, plaintiff and Class Members are entitled to bring this claim for injunctive and other equitable relief.  The specific equitable relief they request is stated in their prayer (below).

## COUNT V
## DECLARATORY RELIEF

80.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     An actual controversy has arisen and now exists between plaintiff and CHASE regarding the manner in which CHASE accounts for payments it receives in "short" sales and its statutory duty to report the receipt of mortgage interest as alleged above.

82.     Plaintiff and the Class Members contend that CHASE has maintained policies whereby it consents to a short sale, resulting in the payment of money to CHASE for unpaid mortgage interest and principal balance.  Plaintiff further contends CHASE applies money from the proceeds of the sale to unpaid mortgage interest and so states on Form 1099-C it issues to its borrowers.  Having received mortgage interest payments from the proceeds of the sale, CHASE knowingly and intentionally does not issue to borrowers a Form 1098 when it is legally obligated to do so.

83.     A declaratory judgment is necessary to immediately resolve the issue as to whether CHASE is failing to report Class Members' mortgage interest payments on

Form 1098s and whether CHASE should be required to provide corrected 1098 forms to the Class Members for all years in which its policies did not conform to law.

84.     Without such a declaratory judgment, plaintiff and the Class Members will have no way of properly reporting their payments of mortgage interest to the IRS in their tax returns and cannot correct previous errors caused by CHASE in this regard.

85.     Wherefore, declaratory relief is necessary and proper in this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of himself and all Class Members, prays for judgment and injunctive and equitable relief against CHASE as follows:

(a)     Certification of the classes pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, certifying plaintiff as the representatives of the classes (and for the California sub-class (if necessary)), and designating plaintiff's counsel as counsel for the class (and subclass if necessary);

(b)     A judicial declaration that CHASE has committed the violations alleged herein;

(c)     For general and special damages in an amount to be proven at time of trial, including, but not limited to, the time of Class Members incurred in correcting CHASE'S wrong, the accountancy fees necessary to amend their tax returns and/or to determine the value of any lost deductions, and the value of any lost deductions;

(e)     For punitive or exemplary damages on all causes of action where appropriate;

(f)     For an order that CHASE be compelled to issue correct Forms 1098 to all Class Members for all years in which it has done so wrongfully, or has failed to do so, as alleged herein, and for which there is still sufficient

time for Class Members to amend their tax returns for that year.  Plaintiff further requests that as part of its equitable powers, the Court order CHASE to pay for the accounting fees necessary for all Class Members to amend their tax returns should they wish to do so to correct CHASE's error.   And further that CHASE be ordered henceforth to properly account for payments of mortgage interest that are made as part of "short" sales and that CHASE report those payments on Form 1098.

(g)     An order in equity (if no damages are awarded) requiring CHASE to pay any accountancy expenses necessary to determine if Class members lost money as a result of CHASE's reporting policy of mortgage interest on their Forms 1098;

(h)     Prejudgment interest at the legal rate;

(j)      Attorney's fees according to proof at time of trial;

(k)     Costs of suit, including expert witness fees and costs, herein incurred;

(l)      For such other and further relief as this Court may deem proper and just;

///
///
///

**CLASS ACTION COMPLAINT**

1

## JURY TRIAL DEMAND

Plaintiff and all those similarly situated hereby demand a trial by jury for all issues so triable, including all of plaintiff's claims and any affirmative defenses that may be asserted herein.  Further, if any arbitration agreement is asserted by CHASE, plaintiff demands that any questions of fact relating to whether plaintiff's claim is arbitrable be decided by a jury.

Date: October 20, 2016

MORRIS POLICH & PURDY LLP

By: _____ */s/ David J. Vendler* _____
             David J. Vendler

and

MICHAEL R. BROWN
A PROFESSIONAL LAW CORPORATION

By: _____ */s/ Michael R. Brown* _____
            Michael R. Brown

Attorneys for ROBERT J. NEELY and all others similarly situated

**CLASS ACTION COMPLAINT**