**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01924-AG-KESx							Date: April 9, 2018

Title: ROBERT J. NEELY v. JP MORGAN CHASE BANK, N.A.

PRESENT:

<u>THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE</u>

<u>Jazmin Dorado</u>						<u>Not Present</u>
Courtroom Clerk							Court Reporter

ATTORNEYS PRESENT FOR					ATTORNEYS PRESENT FOR
PLAINTIFF:										DEFENDANT:
None Present									None Present

**PROCEEDINGS (IN CHAMBERS):**			Order GRANTING in Part and DENYING in Part Defendant's Motion to Compel (Dkt. 64)

**I.		BACKGROUND.**

Plaintiff Robert J. Neely ("Plaintiff") alleges that, after defaulting on his mortgage, he sold his principal residence in Laguna Beach "short" for $2.3 million in 2014, with an unpaid principal balance of approximately $3.5 million owed to his lender, Defendant JP Morgan Chase Bank, N.A. ("JPMC"). (Dkt. 1 at ¶¶ 18-20.) Plaintiff contends that a significant portion of the short sale proceeds should have been applied to unpaid interest on the mortgage before unpaid principal, and that JPMC should have issued him an Internal Revenue Service Form 1098 ("1098 Form") reflecting these interest payments. (Id. at ¶¶ 15, 25.) Plaintiff alleges that had JPMC done so, he could have deducted his interest payments from his reported income in 2014 and reduced his federal income taxes. (Id. at ¶ 27.) He thus asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, violations of California's Unfair Competition Law, and declaratory and injunctive relief. (Id., at ¶¶ 55-85.) He seeks to certify a class of similarly situated borrowers. (Id. at ¶ 44.)

JPMC disputes Plaintiff's contractual argument concerning the required allocation of his payment between principal and interest, but argues that even if it had mailed Plaintiff a 1098 Form, "Plaintiff either could not or would not have taken a mortgage interest tax deduction in 2014 for the Laguna Beach property .…" (Dkt. 64-1 at 7.)

/ / /

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01924-AG-KESx                                                                           Date: April 9, 2018
Page 2

## II. INSTANT DISCOVERY DISPUTE.

On March 20, 2018, JPMC filed a motion to compel Plaintiff to respond to certain discovery concerning Plaintiff's taxes. (Dkt. 64.) The discovery at issue is as follows:

- Requests for Admission ("RFA") nos. 11-15 which asked Plaintiff to admit that he reported an adjusted gross income of "$x" on his federal tax return for tax years 2007, 2008, 2010, 2011, and 2012, respectively. (Dkt. 64-1 at 24-26.)

- Requests for Production ("RFP") no. 7 (seeking Plaintiff's tax returns for the years 2012 through 2016), no. 8 (seeking all supporting documents for those returns), and no. 9 (seeking all communications with any tax preparers who assisted in preparing those returns). (Id. at 22-24.)

- Deposition questions about Plaintiff's pre-2014 taxes. At deposition, JPMC attempted to ask Plaintiff questions about Plaintiff's tax documents that JPMC already had in its files due to its lending relationship with him, namely, Plaintiff's tax returns for tax years 2007, 2008, 2010, 2011, and 2012. (Id. at 11-22, 26.) JPMC clarifies that while it has these returns, they "do not appear to include all schedules." (Id. at 26, n.10.) JPMC does not possess Plaintiff's 2006, 2009, or 2013 tax returns. (Id.)

At deposition, Plaintiff's attorney instructed Plaintiff not to answer on several grounds including relevance, privilege, privacy, and JPMC's alleged violation of an earlier agreement between counsel concerning the sequence of discovery. (Id. at 11-22.)

The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons below, the motion is GRANTED in part and DENIED in part. The hearing noticed for April 17, 2018, at 10:00 a.m. is taken OFF-CALENDAR.

## III. DISCUSSION.

### A. Applicable Law.

Discovery must be limited to matters relevant to the parties' claims or defenses. Fed. R. Civ. P. 26(b)(1). It must also be proportional to the needs of the case, which implicates factors including "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "The party seeking to compel an inspection under Rule 34 has the initial burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(1)." Safeco Ins. Co. of Am. v. Monroe, No. 15-cv-1471-RGK (KKx), 2016 U.S. Dist. LEXIS 190260, at *6 (C.D. Cal. Jan. 11, 2016) (citation omitted). "Following that showing (or if relevance is plain from the face of the request), the party who resists discovery then has the burden to show that discovery should not be allowed, and carries the 'heavy burden of clarifying, explaining, and supporting its objections.'" Id. (citations omitted); see also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:16-cv-01924-AG-KESx                                        Date: April 9, 2018
                                                                      Page 3

United States v. McGraw-Hill Companies, Inc., No. 13-cv-779-DOC (JCGx), 2014 U.S. Dist. LEXIS 59408, at *23 (C.D. Cal. Apr. 15, 2014) ("Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance. In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence.") (citations omitted).

Tax returns are generally privileged under California law,[1] although a plaintiff may waive the privilege by bringing claims inconsistent with assertion of the privilege. See Schnabel v. Superior Court, 5 Cal. 4th 704, 720-21 (1993); Weingarten v. Superior Court, 102 Cal. App. 4th 268, 274 (2002). "A trial court has broad discretion in determining the applicability of a statutory privilege." Weingarten, 102 Cal. App. 4th at 274. In deciding whether to order production of tax documents, courts consider, among other things, whether the relevant financial information can be gleaned from other sources. See Sater v. Chrysler Group, LLC, No. 14-00700-VAP-DTB, 2016 U.S. Dist. LEXIS 76221, at *8, n. 3 (C.D. Cal. Mar. 4, 2016) (noting plaintiffs had "not otherwise identified any other records that have been produced that would supply the information being sought"); Barrous v. BP P.L.C., No. 10-02944, 2011 U.S. Dist. LEXIS 42380, at *12 (N.D. Cal. April 14, 2011) (noting that "the party resisting production [had] failed to identify other financial documents or records that it had produced that would supply the relevant information").

**B.    RFAs.**

Plaintiff responded to the disputed RFAs by objecting on grounds of relevancy and privilege. (Dkt. 64-1 at 24-26.) He did not provide a substantive response. (Id.)

JPMC contends that admissions concerning Plaintiff's income in pre-2014 tax years are relevant because the information will show "the extent to which Plaintiff was allegedly damaged by not deducting mortgage interest 'payments' for the Laguna Beach property from his 2014 income." (Id. at 37 (emphasis added).)

If Plaintiff reported no income in 2014, then that would be relevant to JPMC's defense because it would disqualify Plaintiff from any mortgage interest deduction that year. The Court does not see, however, the relevance of Plaintiff's reported income in other years. By asking about specific entries on Plaintiff's federal tax returns that he jointly filed with his wife, the

---

[1] Because this is a diversity case, California privilege law governs. See Platypus Wear, Inc. v. K.D. Co., Inc., 905 F. Supp. 808, 811 (S.D. Cal. 1995) ("State law governs a claim of privilege in a pure diversity case …."); Lawson v. Grubhub, Inc., No. 15-cv-05128, 2017 U.S. Dist. LEXIS 67736, at *3-4 (N.D. Cal. May 3, 2017) ("Plaintiff's complaint alleges [CAFA] jurisdiction under 28 U.S.C. § 1332(d) and is therefore before the Court on diversity jurisdiction, so state law controls questions of privilege."); see generally Conestoga Servs. Corp. v. Executive Risk Indem., Inc., 312 F.3d 976, 980-81 (9th Cir. 2002) (substantive law of forum state applies in diversity actions).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01924-AG-KESx                              Date: April 9, 2018
                                                                                  Page 4

RFAs invade the tax return privilege without yielding any countervailing discovery benefit. Plaintiff's relevancy and privilege objections to the disputed RFAs are SUSTAINED.

### C.   RFPs.

RFP no. 7: Plaintiff objected on grounds of relevancy and privilege. (Dkt. 64-1 at 22-23.) He agreed to provide his returns for tax year 2014. (Id.) Plaintiff also offered to provide available redacted returns (going back to 2006) that would show if, and when, any mortgage deduction was taken for any of Plaintiff's properties. (Id. at 34, 55; Dkt. 64-3 at 272.)[2] Plaintiff noted that since he "made no mortgage payments for several years prior to 2014 … JPMC already knows that no interest payments meant no interest deductions [on the Laguna Beach property]. Further, [JPMC has] already improperly seen the 2007, 2008, 2010, 2011 and 2012 returns." (Dkt. 64-1 at 55, n.47.)

JPMC makes three arguments as to why Plaintiff's unredacted tax returns from 2012-2016 are relevant:

(1) they may show that the Laguna Beach property was not Plaintiff's principal or secondary residence in 2014, such that he would not have been entitled to deduct mortgage interest for that property (id. at 7; see 26 U.S.C. § 163(h)(4)(A)(i));

(2) they may show that "he already reached the legal maximum in deductions from his other two properties" (Dkt. 64-1 at 7-8; see 26 U.S.C. § 163(h)(3)(B)(ii)); and

(3) they may show that "he did not historically take itemized deductions," which would support an argument that he would not have deducted his mortgage interest in 2014 for the Laguna Beach property even if JPMC had provided a 1098 Form. (Dkt. 64-1 at 8.)

JPMC further asserts that Plaintiff's proposal to produce redacted returns is "unacceptable" because JPMC needs a "complete picture of Plaintiff's tax returns" and Plaintiff's counsel cannot be trusted to make appropriate redactions unilaterally. (Id. at 34-35.)

As to argument (1), a taxpayer is not bound to have the same principal or secondary residence every year. Thus, tax returns showing properties for which Plaintiff claimed a mortgage interest deduction in prior years would have little tendency to prove or disprove that the Laguna Beach property was his principal or secondary residence in 2014. Moreover, information identifying Plaintiff's principal or secondary residence is available from other sources, such as Plaintiff's testimony, his wife's testimony, records concerning where Plaintiff receives mail, is registered to vote, etc. While JPMC cites Martinez v. Mares, No. 14-cv-41,

---

[2] The Court assumes that, in making this offer, counsel obtained the consent of Plaintiff's wife, who jointly filed the returns. See Coate v. Super. Ct., 81 Cal. App. 3d 113, 115 (1978) ("In the absence of a waiver by each of the holders of the privilege, the court may not compel disclosure of joint federal or joint state income tax returns, or any information contained therein.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01924-AG-KESx                                                                 Date: April 9, 2018
                                                                                                                         Page 5

Lexis Unavailable, 2015 WL 12990793 (D.N.M. Feb. 27, 2015), for the proposition that it is entitled to "challenge" Plaintiff's testimony "with contemporaneous documents that contradict him," (Dkt. 66 at 6), the Martinez case did not implicate documents protected by the taxpayer's privilege. And in any event, the redacted returns Plaintiff already offered to produce—together with 1098 Forms—would answer whether Plaintiff claimed the Laguna Beach home as a qualified residence in prior years.

      As to argument (2), the maximum deduction is calculated per tax year. Thus, as Plaintiff points out, whether "he reached a maximum deduction by taking the deductions on two other properties would be on the face of the only relevant document, his 2014 tax return which has been produced." (Dkt. 64-1 at 11 (emphasis omitted).)

      Argument (3) concerning historical deductions does not apply to the post-2014 tax returns sought (i.e., the 2015 and 2016 returns). Additionally, Plaintiff's failure to take deductions in prior years would not have legally precluded him from taking deductions in 2014. At best, JPMC's argument is that if Plaintiff habitually did not take deductions for some reason prior to 2014 (because of some advice from a tax preparer? because he wanted to avoid audits? because he prepared his returns himself and did not want to take the time to claim deductions?), then that same rationale would have guided Plaintiff's decision-making in 2014. This argument does not depend on discovering the entire contents of Plaintiff's tax returns back to 2012 (or 2006). It would be sufficient to learn the answer to a few, targeted questions like: (1) Since 2009 (i.e., five years before the 2014 short sale), had Plaintiff ever deducted mortgage interest on any real property he owned? (2) If not, why not? (3) If so, for which properties and tax years, and why? The redacted returns that Plaintiff offered to produce would partially answer these questions, and as set forth below, the Court approves reopening Plaintiff's deposition for limited questioning.

      Because the majority of the requested documents either have no relevance, or minimal relevance that is far outweighed by Plaintiff's privacy interest, JPMC's motion to compel production in response to RFP no. 7 is DENIED, except that Plaintiff shall produce (as he offered) state and federal redacted returns for 2009-2013 showing any mortgage interest deductions and the associated real property, if listed.[3] Signatures and residential addresses should not be redacted. Although the discovery at issue does not reference tax returns as far back as 2006, JPMC asserts in the Joint Stipulation that returns from that period are relevant. (Dkt. 64-1 at 27, 30.) Nothing in the Joint Stipulation explains why 2006 is the threshold. It may be because Plaintiff refinanced his mortgage in 2006. (Id. at 31.) JPMC has not supported this relevancy argument, and the Court declines to find that any aspect of tax returns earlier than 2009 (i.e., five years before the 2014 short sale) is relevant. See Safeco Ins. Co., 2016 U.S. Dist. LEXIS 190260, at *6.

---

    [3] While this date range extends beyond the timeframe of RFP no. 7, it is consistent with Plaintiff's earlier offer to produce redacted returns and JPMC indicates that it intends to issue RFPs encompassing tax years 2006 through 2011. (Dkt. 64-1 at 33.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01924-AG-KESx　　　　　　　　　　　　　　　　　　Date: April 9, 2018
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

　　　　This order does not preclude any party from arguing that certain information and/or documents are not admissible at trial. In allowing JPMC to conduct discovery relevant to its defense that Plaintiff was a "habitual non-itemizer," the Court neither endorses nor rejects Plaintiff's argument that it would be overly speculative to draw conclusions from historical filings about what Plaintiff would have done with a 1098 Form in 2014. (Dkt. 64-1 at 51.)

　　　　RFP no. 8 seeks all documents that "in any way support YOUR tax positions YOU took in YOUR tax returns for tax years 2012 through 2016." (Id. at 23.) This RFP is overly broad. It would potentially include documents about Plaintiff's investments, retirement accounts, and receipts for charitable giving, all issues wholly unrelated to the claims and defenses in this lawsuit.

　　　　The Court sees potential relevance to JPMC's "habitual non-itemizer" defense in discovering for which pre-2014 years, if any, Plaintiff received a 1098 Form. Such discovery might support an argument that Plaintiff received 1098 Forms in earlier years but did not deduct any mortgage interest, a fact which may weaken Plaintiff's causation argument in this case or which may be relevant to class certification. The Court therefore GRANTS JPMC's motion to compel further production, but limits that further production to any 1098 Forms Plaintiff received in 2009-2014.

　　　　RFP no. 9 asks for all Plaintiff's documents that relate to communications with tax preparers for tax years 2012-2016. (Dkt. 64-1 at 24.) Plaintiff agreed to answer an interrogatory identifying his tax preparers. (Id. at 54.) He has also not objected to the deposition of the accountant who assisted him in the preparation or amendment of his 2014 tax return. (Id. at 53.) He suggests that the Court resolve "the limitation as to the scope of the accountant's examination" in connection with this motion. (Id.)

　　　　The Court sees no relevance in potential communications Plaintiff may have had with his tax preparers about many subjects. The Court does see relevance in the following topics of communication in 2012-2014:

　　　　(1) the pros/cons of itemizing deductions generally;
　　　　(2) advice concerning claiming (or not claiming) deductions for mortgage interest; and
　　　　(3) advice concerning the interpretation or import of 1098 Forms.

　　　　The Court therefore GRANTS JPMC's motion to compel further production in response to RFP no. 9, but limits that further production to (1) documents consistent with the relevant dates/topics listed above, and (2) documents sufficient to identify Plaintiff's tax preparers for those years, if any. If a responsive communication includes an attachment of a draft or final version of a tax return, then that attachment may be omitted if JPMC is provided notice of the omission. Plaintiff's response to RFP no. 9 currently indicates that he is "not aware of any such documents." (Dkt. 64-1 at 24.) If, following a diligent search, Plaintiff confirms that no responsive documents exist, then he shall respond in a manner consistent with Rule 34(b)(2)(B)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:16-cv-01924-AG-KESx | Date: April 9, 2018 |
| | Page 7 |

of the Federal Rules of Civil Procedure.

If JPMC wishes to subpoena any of JPMC's pre-2014 tax preparers to testify on topics beyond those listed above, then before doing so, JPMC shall identify those topics in a letter to Plaintiff's counsel and meet and confer. If the parties cannot reach an agreement as to the appropriate scope of such depositions, then they may use the informal telephonic process for resolving discovery disputes described on the Court's website.

### D. Deposition Testimony.

JPMC seeks to compel Plaintiff to appear for a second deposition session to answer questions his attorney instructed him not to answer at the first session on January 31, 2018, concerning his pre-2014 tax returns and his property in Bermuda Dunes. (Dkt. 64-1 at 27-28.) Plaintiff argues that (1) he was justified in not answering questions about his pre-2014 tax returns based on his relevancy/privilege objections, (2) he had not authorized JPMC to use his tax returns in the litigation, and (3) counsel had agreed to defer discovery concerning Plaintiff's pre-2014 tax returns until the scope of relevance/privilege was decided by the Court. (Id. at 43-45.) Plaintiff's counsel also instructed Plaintiff not to answer a question whether the Bank of America mortgage on a Bermuda Dunes property, Plaintiff's wife's principal home, was "still outstanding" based on a relevancy objection and Mrs. Neely's privacy interests. (Id. at 20-22.)

1. Unauthorized Use Objection.

At deposition, Plaintiff refused to view or authenticate tax documents that he had earlier provided to JPMC. (Dkt. 64-1 at 15.) Plaintiff argues that when he provided his tax returns to JPMC in the course of a refinance, he did so with the understanding that JPMC's privacy policies and/or California privacy laws would limit JPMC's use of those documents to only lending purposes and would prohibit JPMC from disclosing them to third parties. (Id. at 56-58.) He contends JPMC violated those policies and/or laws when it disclosed his tax returns to its counsel for production in this litigation and attempted to question Plaintiff about them at his deposition. (Id.)

In support of his position, Plaintiff cites Fortunato v. Superior Court, 114 Cal. App. 4th 475, 480 (2003) as establishing a "right of privacy relating to documents submitted to a financial institution in connection with a specific transaction." (Dkt. 64-1 at 45.) In Fortunato, a decedent's brother filed a petition to probate decedent's will. Fortunato, 114 Cal. App. 4th at 478. The decedent's daughter filed a will contest alleging that the brother used undue influence to cause decedent to execute the will. Id. She later served a subpoena duces tecum on a bank, requesting, in part, production of documents relating to a loan the bank made to the brother. Id. The brother objected to the subpoena insofar as it sought discovery of his personal tax returns, which he had given to the bank to secure the loan, and he filed a motion for protective order to prevent their discovery. Id. The probate court denied the brother's motion for a protective order relating to his tax return. Id. at 479.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:16-cv-01924-AG-KESx                                        Date: April 9, 2018
                                                                                           Page 8

The California Court of Appeal issued a writ of mandate "commanding the trial court to vacate its order denying the brother's motion for a protective order with regard to his personal tax returns, and to issue a new order granting the requested protection." Id. at 484. The court reasoned that former California Revenue & Taxation Code section 19282 implicitly created a privilege against the disclosure of income tax returns. Id. at 479.[4] Additionally, a right to privacy in the California Constitution protects confidential financial information a customer gives a bank. Id. at 480-81. The court held that the brother's submission of his personal tax returns to the bank for the purpose of obtaining a loan did not effect a waiver of his privilege against forced disclosure of the returns to others. Id. at 481-82. The court of appeal instructed that even upon a potential finding of waiver, the probate court "should have conducted an in camera inspection, where it might have concluded that the tax returns were insufficiently probative to justify disclosure, and that [the daughter's] need for discovery did not outweigh [the brother's] privacy interests." Id. at 481.

In response, JPMC counters that it received an RFP from Plaintiff seeking "all DOCUMENTS that relate in any way to [Plaintiff]." (Dkt. 64-1 at 26.) JPMC searched its files, found the refinance documents, and produced them in the litigation in September 2017. (Id.) Plaintiff's counsel did not object until the date of Plaintiff's deposition in January 2018. (Id. at 27.) JPMC asserts it did nothing wrong in producing the tax returns.

The Court finds JPMC did not act wrongfully by producing tax return documents back to Plaintiff and his counsel in discovery, thereby alerting Plaintiff to its possession of responsive documents. At present, the only parties to this litigation are Plaintiff and JPMC, so the tax returns were not disclosed by production to third-parties. JPMC does not argue that Plaintiff waived any privilege attached to his tax returns by supplying them to the bank to refinance his mortgage, and pursuant to Fortunato, Plaintiff did not. The question remains, however, whether Plaintiff's subsequent initiation of this lawsuit waived any privilege that survived his earlier disclosure of tax returns to JPMC.

    2.  Waiver of Privilege.

JPMC argues that because this lawsuit puts the contents of Plaintiff's tax returns at issue, JPMC may use the previously produced tax returns to question Plaintiff at deposition. (Dkt. 64-1 at 40; Schnabel, 5 Cal. 4th at 721 (privilege waived where "the 'gravamen of [the] lawsuit is so inconsistent with the continued assertion of the taxpayer's privilege as to compel the conclusion that the privilege has in fact been waived'") (citation omitted).) The Court disagrees that Plaintiff has put at issue all contents of his tax returns going back to 2006 and after 2014 through 2016. Plaintiff's claims relate to his ability to take a mortgage interest deduction in the year 2014. Accordingly, based on the analysis above, Plaintiff has put at issue his 2014 tax return and

---

[4] California Revenue and Taxation Code section 19542 now makes it a "misdemeanor for the Franchise Tax Board … to disclose or make known in any manner information as to the amount of income or any particulars … set forth or disclosed" in a state tax return.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01924-AG-KESx                                                 Date: April 9, 2018
                                                                                                                                         Page 9

mortgage interest deductions that Plaintiff did (or did not take) for a reasonable period preceding that year. Consistent with his prior offer, the Court has ordered Plaintiff to produced redacted returns for 2009-2013 showing mortgage interest deductions, and Form 1098s. He has already produced his 2014 return.

Plaintiff's initiation of this lawsuit is not otherwise inconsistent with an assertion of a privilege over his tax returns. "In light of the important public policies underlying privileges … the scope of the waiver of a privilege is generally construed narrowly." Manela v. Superior Court, 177 Cal. App. 4th 1139, 1148 (2009) (citing, inter alia, Fortunato, 114 Cal. App. 4th at 475). That scope "should be determined with reference to the purpose of the privilege." Id. at 1148 (citations omitted). The purpose of the taxpayer privilege is to encourage the voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection. Webb v. Standard Oil Co., 49 Cal. 2d 509, 513 (1957). In this case, finding that Plaintiff waived all privileges associated with his prior tax returns by claiming lost mortgage deductions in 2014 would be contrary to the purpose of encouraging full taxpayer disclosure. Narrowly construing Plaintiff's waiver as required, the Court finds that Plaintiff has waived the taxpayer privilege only with respect to matters concerning the gravamen of this action: the 2014 mortgage interest deduction. JPMC should therefore not use the unredacted pre-2014 tax returns for any pre-trial purpose.

        3.        <u>Second Deposition Session.</u>

Because JPMC will receive available redacted returns for the years 2009 to 2013, the Court determines that Plaintiff's deposition may be reopened for limited examination about those redacted returns. Proper questioning would include: (1) authenticating the redacted returns, if the parties cannot stipulate to their authenticity, (2) establishing who (if anyone) assisted in preparing the returns, (3) identifying what mortgage interest deductions Plaintiff did (or did not take) for which properties, and (4) identifying his reasons for taking (or not taking) mortgage interest deductions (e.g., he did not receive a 1098 Form, he had no income against which to take deductions, he was concerned about an audit, etc.).[5]

Regarding the Bermuda Dunes property, questioning should be limited to (1) whether this property was ever Plaintiff's principal or secondary residence, (2) if so, whether Plaintiff ever

---

[5] The parties dispute whether they had reached an agreement that the pre-2014 tax returns in JPMC's possession would not be introduced at Plaintiff's earlier deposition. JPMC contends such an agreement extended only to JPMC's written discovery (Dkt. 64-1 at 41); Plaintiff argues that the parties understood JPMC would not seek to use the tax returns in any discovery pending court intervention. (Id. at 45.) While Plaintiff correctly states this is "now a moot issue, since the matter is before the Court as the parties had anticipated it would be," (id.), JPMC should have initiated a discussion of this issue—which it knew to be hotly disputed—before Plaintiff's deposition. A pre-deposition judicial resolution might have prevented the inconvenience to Plaintiff of needing to return for a second session of deposition.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:16-cv-01924-AG-KESx | Date: April 9, 2018 |
| | Page 10 |

claimed a mortgage interest deduction on his taxes for that property, and (3) why or why not.

      Lastly, JPMC argues that if Plaintiff is required to return for a second deposition session, then the Court should prospectively order him "to testify about yet-to-be-produced documents" to avoid further motions to compel. (<u>Id.</u> at 42 (capitalization omitted).) The Court declines to issue such an order, trusting that counsel will reach a reasonable agreement addressing any documents produced after Plaintiff's first session of deposition consistent with the scope of relevant discovery defined in this Order. JPMC should not take Plaintiff's second deposition until the parties have resolved their present disagreements over the production of documents that may be relevant to Plaintiff's testimony.

      Initials of Deputy Clerk <u>JD</u>